1    WO

2

3

4

5

6

7                IN THE UNITED STATES DISTRICT COURT

8                   FOR THE DISTRICT OF ARIZONA

9

10

11

12   JACK LERCH and BEVERLY LERCH, )
     husband and wife,            )
13                                )
           Plaintiffs,            )
14                                )       No. CIV 04-1924 PCT RCB
                vs.               )
15                                )              O R D E R
     ALLSTATE INSURANCE COMPANY,  )
16   believed to be an Illinois   )
     corporation; ABC CORPORATIONS )
17   I-X; and ABC PARTNERSHIPS I-X,)
                                  )
18         Defendants.            )
     _____)
19

20        This action centers around a dispute over Defendant Allstate

21   Insurance Company's ("Allstate") handling and denial of fire loss

22   claims filed by Plaintiffs Jack and Beverly Lerch.  Plaintiffs

23   originally brought suit in the Superior Court of Arizona in Navajo

24   County, asserting claims of breach of contract, negligence, and bad

25   faith.  Notice (doc. # 1).  Allstate removed the case on September

26   14, 2004.  Id.  Currently pending before the Court are Allstate's

27   Motion for Summary Judgment and Supplement to Motion for Summary

28   Judgment.  Mot. (doc. ## 33, 37).  The matter has been fully

1  briefed.  <u>See</u> Resp. (doc. # 42, 51); Reply (doc. ## 53-54).  Having

2  carefully considered the arguments raised, the Court now rules.

3  **I.   BACKGROUND**

4       In June of 2002, Plaintiffs were evacuated from their home in

5  Clay Springs, Arizona as a result of the Rodeo-Chedeski forest

6  fires, which burned for four weeks and came within 300 feet of

7  their home.  Def.'s Statement of Facts (doc. # 34) ("DSOF") ¶ 1;

8  Pls.' Statement of Facts (doc. # 43) ("PSOF") ¶ 1.  At one point

9  during the evacuation period, Jack Lerch returned with the approval

10 of authorities to remove ammunition from the home, and observed ash

11 falling from above "just like snow."[1]  PSOF ¶ 14.

12      Plaintiffs returned 15 days after the evacuation to find their

13 home in disarray.  <u>Id.</u> ¶ 2.  Their refrigerator and freezer, which

14 had lost power while they were away, were filled with meat that had

15 thawed and rotted for days.  <u>See id.</u> ¶ 3.  Consistent with

16 firefighters' warnings, many of Plaintiffs' other electrical

17 appliances-- including a personal computer, microwave, stove,

18 television, and VCR-- had fallen from use or otherwise ceased to

19 function properly.[2]  <u>See id.</u> ¶¶ 10, 19.  The metal roof of their

20 home had faded to lime green.  <u>See id.</u> ¶ 12.  According to

21 Plaintiffs, the smell of smoke lingered long after the fire in the

22

23      [1] A report by industrial hygienist Kirsten H. Shaw, M.S., states
24 that the Rodeo-Chedeski forest fires produced 0.6 tons of smoke
   particulate per week.  PSOF ¶ 1.

25      [2] According to the industrial hygienist's report, soot has a
26 corrosive effect on glass and metal surfaces that is known to cause
   damaging electrical arching in electronic equipment.  PSOF, Ex. A.
27 Since the fires, Plaintiffs have observed erratic behavior in their
   electrical appliances, such as a television that shuts off when the
28 volume controls are adjusted.  <u>Id.</u> ¶ 19.

1  home and in the insulation between the ceiling and the roof, which

2  continued to rapidly fade in color.  See id. ¶¶ 11-12.  Outside,

3  the heat had killed the plants and trees, and is suspected to have

4  sterilized the soil.  See id. ¶ 3.

5       At the time of the fires, Plaintiffs' home and personal

6  property were insured under a Deluxe Homeowners Insurance Policy

7  (the "Policy") with Allstate.  DSOF ¶ 1.  Within three weeks of

8  their return home, Allstate adjuster Jymm Schneider visited

9  Plaintiffs' home three times to inspect their losses, but

10 apparently never asked Plaintiffs to prepare a list of damaged

11 property or informed them of the requirement under the Policy to

12 submit a proof of loss.[3]  Id. ¶¶ 2, 7.  According to Jack Lerch,

13 the adjuster's inspections were cursory and unresponsive to

14 Plaintiffs' concerns.  Schneider did not initially examine

15 Plaintiffs' garage or trailer, and, unlike other insurers, never

16 took any soil samples.  Id. ¶¶ 3-5.  In response to Plaintiffs'

17 concerns with the fetid freezer and refrigerator full of rotting

18 meat, Schneider apparently told Beverly Lerch that Allstate does

19

20      [3]   On June 9, 2003, Allstate sent a letter to Plaintiffs
   acknowledging that it had received notice of their loss on June 20,
21 2002.  See DSOF, Ex. E. at 000353.  The letter states that "[a]t this
   time, we would like to refer you to 'What You Must Do After a Loss'
22 on Page 20 of your policy."  Id.  Thus, nearly one year after having
   received notice of Plaintiffs' loss, Allstate advised Plaintiffs of
23 the requirement to file a proof of loss within 60 days of the claimed
   loss, a deadline which had obviously passed long before the mailing
24 of its letter.  See id.
        A proof of loss form was attached with instructions for
25 Plaintiffs to return the form by June 30, 2003.  See id.  However,
   Allstate stressed that its provision of the form at that late date
26 was not intended as a waiver of any defenses under the Policy.  See
   id.  On June 30, 2003, Allstate acknowledged receipt of Plaintiffs'
27 proof of loss, while reasserting its position of non-waiver.  Id. at
   000181.
28

not cover refrigerators.  Id. ¶ 3.  Plaintiffs received payment for their losses directly from Schneider.  Id. ¶¶ 5, 9; DSOF ¶ 2.

Subsequent to Schneider's visits, Jack Lerch claims that he contacted Allstate by letter to voice his concerns.  PSOF ¶ 6.  He states that after calling a telephone number listed on a letter from Allstate, he was told by an Allstate employee that another adjuster would be sent to inspect their losses.  Id. ¶ 6.  Allstate disputes this, claiming that its "records . . . indicate no efforts were made by the Plaintiffs to contact Allstate about any investigation of the loss or coverage questions."  Reply (doc. # 53) at 5.  Having surmised after several months of silence that a second Allstate adjuster would not be coming, Plaintiffs hired a private adjuster who communicated with Allstate between January and May of 2003.  PSOF ¶ 8; DSOF ¶¶ 3-4.  While awaiting resolution of their claims, Plaintiffs maintain that they did not immediately replace the allegedly damaged appliances due to financial hardship, as Jack Lerch received only disability income and Beverly Lerch had been missing work due to sinus infections.  See PSOF ¶ 15.

In May of 2003, after being contacted by Plaintiffs' private adjuster, Allstate sent a second adjuster, Mike Koepsell, to reinspect Plaintiffs' property.  PSOF ¶ 17; DSOF ¶ 4.  Koepsell noted that the area outside the home still smelled of smoke long after the fire.  PSOF ¶ 17.  In his report, however, he indicated that he smelled no smoke inside Plaintiffs' home.  Id.  Koepsell also refused to take pictures of what Plaintiffs claimed were smoke impressions on the walls inside the home, and ultimately concluded that there were no additional damages.  Id. ¶ 18; DSOF ¶ 4.

On June 13, 2003, Allstate requested recorded statements from

Plaintiffs, and, on November 18, 2003, examined Plaintiffs under oath.  DSOF ¶¶ 6, 8-9.  The examinations revealed that certain electrical appliances reported in Plaintiffs' proof of loss were not thoroughly inspected by Plaintiffs prior to reporting, and, in any event, turned out to be partly or entirely functional.  Id. ¶¶ 10-11.

In July of 2003, Allstate hired Rimkus Consulting Group, Inc. ("Rimkus") to conduct an independent investigation.  DSOF, Ex. J. Rimkus's laboratory results indicated "no evidence of significant smoke damage."  Id.

On March 22, 2004, Allstate denied Plaintiffs' additional claims of damages for their roof, insulation, and electrical appliances for, among other reasons, material misrepresentation. See id.

On August 20, 2004, Plaintiffs filed suit in state court.  See DSOF ¶ 14; Notice (doc. # 1).  Allstate subsequently removed the action to this Court.  Notice (doc. # 1).

On May 16, 2005, Allstate obtained a legal opinion concurring with its view that its investigation was timely, objective, and thorough, that Plaintiffs' delay in presenting their claims had prejudiced Allstate, but adding that there were, at a minimum, "genuine issue[s]" as to Plaintiffs' claims.  DSOF ¶ 15.

In June of 2005, Plaintiffs sold their Clay Springs home for $240,000.  Def.'s Supplement to Statement of Facts (doc. # 38) ("DSSOF") ¶¶ 1-2.  At his deposition on August 10, 2005, Jack Lerch estimated that, had Allstate honored Plaintiffs' claims, the home might have sold for $263,000.  Id. ¶¶ 3-4.  Plaintiffs have also obtained an affidavit from a realtor valuing the home at $325,000

- 5 -

1  had appropriate repairs been made.  Pls.' Supplement to Statement
2  of Facts (doc. # 52) ("PSSOF") ¶ 2.

3  **II.   STANDARD OF REVIEW**

4       Summary judgment is appropriate "when there is no genuine
5  issue of material fact" such that "the moving party is entitled to
6  judgment as a matter of law." Fed. R. Civ. P. 56.  In determining
7  whether to grant summary judgment, a district court must view the
8  underlying facts and the inferences to be drawn from those facts in
9  the light most favorable to the nonmoving party.  See Matsushita
10 Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

11      If a party will bear the burden of proof at trial as to an
12 element essential to its claim, and fails to adduce evidence
13 establishing a genuine issue of material fact with respect to the
14 existence of that element, then summary judgment is appropriate.
15 See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Not
16 every factual dispute is capable of defeating a properly supported
17 motion for summary judgment.  Rather, the party opposing the motion
18 must show that there is a genuine issue of material fact.  See
19 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A
20 factual dispute is genuine if the evidence is such that a rational
21 trier of fact could resolve the dispute in favor of the nonmoving
22 party.  Id. at 248.  A fact is material if determination of the
23 issue might affect the outcome of the case under the governing
24 substantive law.  Id.  Thus, a party opposing a motion for summary
25 judgment cannot rest upon bare allegations or denials in the
26 pleadings, but must set forth specific facts demonstrating a
27 genuine issue for trial.  See id. at 250.  If the nonmoving party's
28 evidence is merely colorable or not significantly probative, a

court may grant summary judgment.  See id. at 249; see also Cal.
Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, 818 F.2d
1466, 1468 (9th Cir. 1987).

**III. DISCUSSION**

    In its motion for summary judgment, Allstate argues that (1)
Plaintiffs' noncompliance with the terms of the Policy, e.g., by
failing to file a timely proof of loss, should bar all their
claims, (2) there is no evidence to support Plaintiffs' claim of
bad faith, (3) there is no evidence to support Plaintiffs' prayer
for punitive damages, (4) Plaintiffs' evidence of damages related
to the loss in value of their residence should be limited to
estimates made by Jack Lerch at his deposition, and (5) some of the
personal property claimed by Plaintiffs would not have been covered
under the policy.  The Court addresses each argument in turn.

    **A. Plaintiffs' Compliance with Terms of Insurance Policy**

    Because Plaintiffs did not request an appraisal to dispute
their initial settlement or submit a timely proof of loss within
the 60-day window required by the Policy, Allstate contends that
Plaintiffs should not recover on their claims for breach of
contract, negligence, and bad faith, or receive any punitive
damages.  See Mot. (doc. # 33) at 6-7.

    In its motion, Allstate quotes extensively from the Policy,
but provides no citation for the Court to verify the relevant
provisions.  See Mot. (doc. # 33) at 4-6.  Although Allstate had
apparently intended to include the Policy as an exhibit to its
statement of facts, see DSOF ¶ 1, it did not do so.  See DSOF, Ex.
A-L; DSSOF, Ex. 1-4.  Any argument based on coverage or Plaintiffs'
alleged noncompliance with the Policy would therefore fail for

- 7 -

1    Allstate's failure to adduce evidence of the Policy terms.

2          Even if Allstate had produced such evidence, there are genuine

3    issues of material fact that would preclude summary judgment.  In

4    response to Allstate's argument concerning the tardy filing of the

5    proof of loss, Plaintiffs contend that Allstate was responsible for

6    the delays and should therefore be estopped from enforcing those

7    time limitations against them.  <u>See</u> Resp. (doc. # 42) at 6-7

8    (citing <u>Zuckerman v. Transamerica Ins. Co.</u>, 133 Ariz. 139, 650 P.2d

9    441 (1982)).  For instance, Plaintiffs claim that Jymm Schneider,

10   the adjuster initially assigned to their claim, was unresponsive to

11   their concerns and did not provide them with a proof of loss form.

12   Resp. (doc. # 42) at 5-6.  Indeed, based on the record provided by

13   Allstate, it appears that Allstate first provided Plaintiffs with a

14   proof of loss form nearly one year after it had received notice of

15   Plaintiffs' loss.  <u>See</u> DSOF, Ex. E. at 000353.  Furthermore,

16   Plaintiffs claim that Jack Lerch attempted to contact Allstate by

17   letter and by phone to discuss their loss during the first few

18   months after the fires.  PSOF ¶ 6.  Although Allstate denies any

19   such contact, and maintains that many of Plaintiffs' claims were

20   presented for the first time months after the loss, those factual

21   disputes must be resolved by the jury.  <u>See</u> Reply (doc. # 53) at 5.

22   Accordingly, even if Allstate had produced evidence of the Policy

23   terms allegedly breached by Plaintiffs, its motion for summary

24   judgment would still be denied.

25       **B. Bad Faith**

26       Under Arizona law, the tort of bad faith occurs when an

27   insurer "intentionally denies, fails to process or pay a claim

28   without a reasonable basis."  <u>Noble v. Nat'l Am. Life Ins. Co.</u>, 128

Ariz. 188, 624 P.2d 866, 868 (1981).  A plaintiff establishes bad faith on the part of an insurance company by showing that the company (1) denied the claim without a reasonable basis for the denial, and (2) either knew or recklessly disregarded the fact that it did not have a reasonable basis for denying the claim.  Noble, 624 P.2d at 868.  The first prong of the test for bad faith is an objective test based on reasonableness.  Trus Joist Corp. v. Safeco Ins. Co., 153 Ariz. 95, 735 P.2d 125, 134 (Ct. App. 1986).  The second prong is a subjective test, requiring the plaintiff to show that the defendant insurance company committed consciously unreasonable conduct.  Id.

One factor relevant to considering whether the insurer's conduct was reasonable under the first prong is whether the claim was "fairly debatable."  Deese v. State Farm Mut. Auto. Ins. Co., 172 Ariz. 504, 838 P.2d 1265, 1268 (1992).  The fair debatability of a claim is not dispositive.  Zilisch v. State Farm Mut. Auto. Ins. Co., 196 Ariz. 234, 995 P.2d 276, 280 (2000) (Martone, J.) (en banc) ("[A]s we have held, while fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition.").  Instead, "[t]he appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable."  Id.

Allstate argues that Plaintiffs' claim of bad faith fails as a matter of law, insisting that they acted reasonably in handling a fairly debatable claim, and that there is "[n]o evidence

demonstrat[ing] any unfair or dishonest treatment." Reply (doc. # 53) at 5-7; Mot. (doc. # 33) at 8. For much of the same reasons discussed above, the Court rejects this argument. There is ample evidence from which a jury could find that Allstate acted knowingly in an unreasonable manner in handling Plaintiffs' claim. For example, Plaintiffs' evidence suggests that Allstate's adjuster, Jymm Schneider, did not conduct a thorough investigation of Plaintiffs' losses, may have misinformed Plaintiffs' as to coverage under the Policy by telling Beverly Lerch that refrigerators were not covered, and did not advise Plaintiffs of the need to submit a list of damaged property or provide them a proof of loss form for doing so. PSOF ¶¶ 3-5, 7. Indeed, as explained above, the record supplied by Allstate suggests that it first provided Plaintiffs with a proof of loss form nearly one year after the date on which it acknowledged having received notice of Plaintiffs' loss-- well beyond the 60-day filing window it faults Plaintiffs for missing. See DSOF, Ex. E. at 00353. Regardless of whether any of Plaintiffs' claims were fairly debatable, the evidence is not such that a reasonable jury could only conclude that Allstate was reasonable in its processing of Plaintiffs' fire loss claims.

Allstate suggests that the existence of a factual dispute actually advances, rather than defeats, its argument for summary judgment. Reply (doc. # 53) ("'[W]hen there is a question of fact as to liability on the underlying policy, then as a matter of law, the insurance company is not liable for bad faith.'") (quoting Knoell v. Metro. Life Ins. Co., 163 F. Supp. 2d 1072, 1075 (D. Ariz. 2001) (Teilborg, J.)). Allstate's reliance on Knoell is misplaced. In Knoell, the court acknowledged that the insurer's

belief that the claim was fairly debatable "[wa]s a question of fact for the jury," but granted summary judgment only because the plaintiff had failed to offer any evidence calling into question the insurer's belief.  Knoell, 163 F. Supp. 2d at 1077.

Unlike Knoell, there is sufficient evidence in the instant case to cast doubt on Allstate's belief that Plaintiffs' claim was fairly debatable.  For example, Schneider apparently ignored Plaintiffs' complaints regarding damage to the landscaping, although other insurers were taking soil samples.  PSOF ¶ 4. Likewise, Allstate's oblique denial of Plaintiffs' claim for roof damage might reasonably be questioned in light of the replacement of neighbors' roofs by other insurers presented with claims under ostensibly similar policies.  Id. ¶¶ 11-13.  The reasonableness of Allstate's belief can also be doubted in light of the observations and actions of its second adjustor, Mike Koepsell.  After observing that the smell of smoke had lingered in the area long after the fire, Koepsell claimed not to smell any smoke in Plaintiffs' home, in spite of Plaintiffs' observations to the contrary.  PSOF ¶¶ 17.

In view of these genuine issues of material fact, summary judgment is inappropriate.  It will be for the jury to decide whether the claims were fairly debatable, and whether "in the investigation, evaluation, and processing of the claim, [Allstate] acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable."  See Zilisch, 995 P.2d at 280. Accordingly, Allstate's Motion for Summary Judgment (doc. # 33) will be denied as to Plaintiffs' claim of bad faith.

. . .

1    ## C. Punitive Damages

2        Under Arizona law, an award of punitive damages requires

3    evidence that the "defendant either (1) 'intended to injure the

4    plaintiff . . . [or (2)] consciously pursued a course of conduct

5    knowing that it created a substantial risk of significant harm to

6    others.'"  Gurule v. Ill. Mut. Life & Cas. Co., 152 Ariz. 600, 734

7    P.2d 85, 87 (1987) (quoting Rawlings v. Apodaca, 151 Ariz. 149, 726

8    P.2d 565, 578 (1986)) (alteration in original).  The Supreme Court

9    of Arizona has noted that, on a motion for summary judgment on the

10   issue of punitive damages, "the evidence and all reasonable

11   inferences that may be drawn from the evidence should be construed

12   in a light most favorable to the non-moving party."  Thompson v.

13   Better-Bilt Aluminum Prods. Co., 171 Ariz. 550, 832 P.2d 203, 211

14   (1992).  Finally, "[w]hile some of the evidence might equally

15   reasonably support alternative inferences that do not suggest an

16   evil mind, the choice among reasonable inferences is one properly

17   reserved for the jury."  Id.; accord Borland v. Safeco Ins. Co. of

18   Am., 147 Ariz. 195, 709 P.2d 552, 557 (Ct. App. 1985) ("If there is

19   a reasonable view of the evidence that will support punitive

20   damages the question should be left to the jury.").

21       Allstate contends that Plaintiffs should be precluded from

22   pursuing punitive damages, because they "have produced no facts

23   suggesting any intent to injure Plaintiffs, or any wrongful

24   conduct, let alone wrongful conduct driven by spite, actual malice

25   or intent to defraud."  Mot. (doc. # 33) at 9.  Plaintiffs respond

26   that Allstate's "evil mind" need not be established by direct

27   evidence, but may be inferred from its conduct.  See Resp. (doc. #

28   42) at 10-11 (citing Gurule, 734 P.2d 85); see also Thompson, 832

                                  - 12 -

1  P.2d at 210 ("The plaintiff can, of course, satisfy this burden of
2  proof through direct evidence, *i.e.*, an admission by the defendant.
3  Because such admissions are relatively rare, however, the plaintiff
4  can also make its case with indirect and circumstantial
5  evidence.").

6       In the present case, it would require much more than
7  reasonable inferences from the evidence submitted for Plaintiffs to
8  maintain their claim for punitive damages.  Plaintiffs contend that
9  Allstate's accusations of material misrepresentation in its denial
10 of their later claims are at odds with its payment on a plumbing
11 claim.  See Resp. (doc. # 51) at 7-8.  Allstate's denial, however,
12 was based only partly on alleged material misrepresentations by
13 Plaintiffs.  See DSOF, Ex. J.  The Court finds no reason to impute
14 that basis for denial to all claims so as to create the appearance
15 of duplicitous intent implied by Plaintiffs' response.  Moreover,
16 while it may be troubling that meat had rotted in Plaintiffs'
17 refrigerator for six days during the evacuation period, and that
18 Beverly Lerch subsequently suffered from sinus infections some time
19 after the fires, see PSOF ¶¶ 3, 15, 19, there is no additional
20 evidence to support a reasonable inference that the refrigerator
21 posed a dire health risk to Plaintiffs or that Beverly Lerch's
22 sinuses were irritated as a result of the smoke in the home.  In
23 sum, none of the evidence supports a reasonable inference that
24 Allstate consciously pursued a course of conduct knowing that it
25 created a substantial risk of significant harm to Plaintiffs, much
26 less intended to injure them.  See Gurule, 734 P.2d at 87.
27 Therefore, Allstate's Motion for Summary Judgment (doc. # 33) on
28 the issue of punitive damages will be granted.

**D. Damages to Plaintiffs' Former Home**

Under Arizona law, if property can be replaced or restored at a cost that can be readily ascertained, "the proper measure of damages is the replacement or restoration cost not to exceed the diminution in market value." <u>A.I.D. Ins. Servs. v. Riley</u>, 25 Ariz. App. 132, 541 P.2d 595 (Ct. App. 1975).

Allstate, in its supplement to its motion for summary judgment (doc. # 37), essentially seeks to preclude Plaintiffs from offering newly obtained evidence on the issue of damages.  Allstate would apparently have the Court limit Plaintiffs' presentation of damages to the deposition testimony of Mr. Lerch.  <u>See</u> Supplement (doc. # 37) at 3 ("[P]laintiffs should be precluded as a matter of law from requesting any additional damages for their former home.").  Because a motion for summary judgment is not the proper procedural vehicle for the relief requested by Allstate, its supplemented motion for summary judgment (doc. ## 33, 37) as to the issue of damages will be denied.[4]

**E. Covered Property**

Finally, in its supplement to its motion for summary judgment, Allstate contends that it could not be liable for breach of contract, negligence, or bad faith in connection with its handling and denial of Plaintiffs' claims for certain personal property, because Plaintiffs apparently did not throughly inspect every item reported as damaged.  <u>See</u> Supplement (doc. # 37) at 3-4.  Thus,

---

[4]   Even if Allstate had raised the matter by the proper motion, its request would be denied, because the evidence and legal arguments presented do not adequately establish a basis for the exclusion of Plaintiffs' evidence of damages.

1   Plaintiffs had managed to report personal property that had not
2   suffered a "direct physical loss," and that would not be covered
3   under the Policy.  See id.

4        As an initial matter, any coverage issue relating to personal
5   property does not dispel the controversy surrounding Plaintiffs'
6   other claims for roof damages and landscaping.  Moreover, as
7   explained before, Allstate's failure to include the evidence of the
8   Policy terms precludes summary judgment on an argument that turns
9   so closely upon the terms of the Policy.  Even if such evidence had
10  been provided, Allstate's argument would fail for the following two
11  reasons.

12       First, there are factual disputes whether Plaintiffs' personal
13  property suffered a "direct physical loss" as a result of the fire.
14  For example, Allstate emphasizes the fact that Plaintiffs'
15  television functions, while Plaintiffs maintain that it does not
16  function properly, shutting off unexpectedly when the volume is
17  adjusted.  See PSOF ¶ 19.  Consistent with Plaintiffs'
18  observations, the report of Kirsten H. Shaw, M.S., industrial
19  hygienist, explains that the corrosive effect of soot on glass and
20  metal surfaces is known to cause damaging electrical arching in
21  electronic equipment.  Id., Ex. A.

22       Second, just as Allstate denied Plaintiffs' claims on the
23  basis of material misrepresentation, its argument insinuates that
24  Plaintiffs did not act in good faith by reporting appliances that
25  were functional.  See DSOF, Ex. J.  However, Plaintiffs profess
26  that their claims were made in a good faith belief, based on
27  representations made to them by firefighters, that their electronic
28  equipment was susceptible to damage on account of the fire.  See

1  PSOF ¶ 10.  Plaintiffs may have been justified in reporting those

2  items in good faith, with the expectation that Allstate would

3  subsequently make a fair determination of coverage.  Given the

4  exigencies of the circumstances following the disaster, the jury

5  could reasonably accept Plaintiffs' explanation that they did not

6  have the time to conduct more thorough testing prior to reporting

7  their losses to Allstate, or it may adopt Allstate's view that

8  Plaintiffs had knowingly exaggerated their losses.

9      Based on the evidence and arguments presented, the issues of

10 coverage must be reserved for the consideration of the jury.

11 Allstate's supplemented motion for summary judgment (doc. ## 33,

12 37) on questions of coverage will therefore be denied.

13     **IT IS THEREFORE ORDERED** that Defendant's Motion for Summary

14 Judgment (doc. ## 33, 37) is GRANTED in part and DENIED in part.

15 The Motion for Summary Judgment (doc. # 33) is GRANTED with respect

16 to the issue of punitive damages only.  Defendants Motion of

17 Summary Judgment (doc. ## 33, 37) is DENIED with respect to all

18 other issues.

19     DATED this 27th day of June, 2006.

20

21

22     _____

23     Robert C. Broomfield
       Senior United States District Judge

24

25

26

27

28 Copies to counsel of record

- 16 -